OSTRANDER *v.* BOARD OF SUPERVISORS OF GRATIOT
COUNTY.

CITIES—REINCORPORATION—WARD SUPERVISORS—REPRESENTATION
ON COUNTY BOARD—ASSESSORS.

> The proviso to section 1, chap. 31, of the general act for the incorporation of cities of the fourth class (Act No. 215, Pub. Acts 1895), that any incorporated city which shall become reincorporated under the act, having an assessor, "may" retain its present method of assessing property and levying taxes, and that the assessor in office when the act takes effect "shall" remain in office until the expiration of his term, is permissive merely, and cities not availing themselves of the permission are entitled, under chapter 5, § 2, to elect supervisors in the several wards of the city, who, under the provisions of chapter 7, § 26, are to represent their respective wards upon the board of supervisors.

*Certiorari* to Gratiot; Daboll, J. Submitted November 17, 1896. Decided December 4, 1896.

*Mandamus* by Stephen Ostrander and others, supervisors of the several wards of the city of St. Louis, to compel the board of supervisors of Gratiot county to admit relators to seats as members of said board. Respondent brings *certiorari* to review an order granting the writ. Affirmed.

*T. W. Whitney*, for relators.

*W. A. Leet* and *George P. Stone*, for respondent.

MONTGOMERY, J. The village of St. Louis became incorporated as a city by and under Act No. 211, Local Acts 1891. By this act the city was divided into four wards, and it was provided that the city should elect a city assessor, and that such assessor should constitute the representative of the city on the board of supervisors.

The general act for the incorporation of cities, being Act No. 215, Pub. Acts 1895, provides for the reincorporation of all cities previously incorporated of a certain class, unless 50 or more of the qualified voters of an existing city shall petition for an election to determine whether the city shall remain incorporated under its previous special act. No such action was taken by the city of St. Louis, and Act No. 215 therefore became operative. In the spring of 1896 the city elected the several relators· as supervisors of the respective wards of said city. Relators appeared at the June session of the board of supervisors, and claimed the right to a seat upon the board. Their claim was rejected, and thereupon they instituted a proceeding by *mandamus* in the circuit court of Gratiot county to have their claims recognized. After a hearing, such *mandamus* was granted, and the respondent has sued out a writ of *certiorari* to this court to review the action of the circuit judge in granting the *mandamus.*

The question turns upon the construction of three sections of Act No. 215, being section 26 of chapter 7, section 1 of chapter 31, and section 2 of chapter 5. Section 26 reads as follows:

"The supervisors of the several wards are authorized to perform the same duties in relation to the assessment of property and levying taxes for all purposes in their respective wards as are imposed by law upon supervisors elected in townships, and they shall have the like powers and perform the like duties in all other respects as supervisors so elected, except as herein otherwise provided, so far as such powers and duties are required to be exercised and performed in their wards. They shall represent their several wards in the board of supervisors of the county in which the city is located, and shall have all rights, privileges, and powers of the several members of such board of supervisors: *Provided,* that any city now having a greater representation upon the board of supervisors of any county than is provided by this act shall continue to have such representation as it may have at the time of such reincorporation, and, if the office of any

111 MICH.—5.

officer now representing any such city upon the board of supervisors is abolished by this act, the council of such city may annually appoint some suitable person, being a resident elector of such city, to represent the city upon the board of supervisors in the place of such officer whose office has been abolished."

The provisions of this section would seem to be clear and unambiguous, when construed in connection with section 2 of chapter 5, which provides that "in each ward a supervisor * * * shall be elected." Section 26 defines the duties of such supervisors, and in terms provides that they shall represent their several wards on the board of supervisors of the county. The only proviso is that any city now having a greater representation upon the board of supervisors of any county than is provided by this act shall continue to have such representation. As this city had not previously a greater representation, it is clearly not within the terms of the proviso, unless the language of the proviso is to be controlled by other provisions of the act.

It is contended that the proviso to section 1 of chapter 31 should be construed in connection with section 26 of chapter 7. That proviso is contained under the title, "Assessment and Collection of Taxes," and follows a provision requiring supervisors to make a complete assessment, etc., and is as follows:

" *Provided*, that any city now incorporated, and which shall become reincorporated under this act, now having an assessor for the assessment of property and the levying of taxes, such city may retain its present method of assessing property and levying taxes, and such assessor in office at the time this act shall take effect shall remain in office until the expiration of the term for which he was appointed or elected, and until his successor shall have been appointed and qualified."

We think this latter provision is merely permissive, and that, notwithstanding this proviso, cities incorporated under Act No. 215 are entitled to elect supervisors in the various wards of the city, as authorized by said act,

and that there is no fair construction of any provisions of the statute which leads to any other result.

The order of the circuit judge will be affirmed.

LONG, C. J., GRANT and MOORE, JJ., concurred. HOOKER, J., did not sit.